<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

| | |
|---|---|
| CARMINE SAUCHELLI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES POSTAL SERVICE and | ) |
| FRANK POSTORINO, | ) |
| | ) |
| Defendants. | ) |

Civil Action No. 08-1682 (GEB)

**MEMORANDUM OPINION**

_____

<u>**BROWN, Chief Judge**</u>

This matter comes before the Court upon the Motion for Summary Judgment (Doc. No. 28) filed by the plaintiff Carmine Sauchelli ("Plaintiff") and the Motion for Summary Judgment (Doc. No. 29) filed by the defendants the United States Postal Service and Frank Postorino (collectively "Defendants"). (Doc. No. 21.)  Both motions are opposed.  The Court has reviewed the parties' submissions and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons that follow, the Court will grant Defendants' motion and deny Plaintiff's motion.

**I.     BACKGROUND**

This matter involves a letter carrier for the United States Postal Service who was terminated from employment.  Plaintiff has asserted that he was terminated due to his gender, and that he also experienced a hostile work environment due to his gender, both in violation of

1

Title VII.  Defendants deny these assertions and have filed a motion for summary judgment.

Plaintiff opposes this motion, and he has also filed a motion for summary judgment, which

Defendants oppose.

Plaintiff began working at the United States Postal Service as a letter carrier in July 1987

and was employed there until the date of his termination on April 22, 2005. (Defs.' 56.1 Stmt. ¶

1; Doc. No. 29-1.)   Defendant Postorino started as Plaintiff's supervisor in or about Fall 2000.

During Plaintiff's employment under Defendant Postorino's supervision, Defendant Postorino

disciplined Plaintiff on a number of occasions:[1] (1) on November 29, 2001, Plaintiff was spoken

to for deviating from his route and going home for lunch; (2) on January 25, 2002, Plaintiff was

issued a Letter of Warning, citing "unsatisfactory performance" after he was found at his home

during the day and out of uniform; (3) on February 23, 2002, Plaintiff was issued a Notice of

Seven Day Suspension for "Failure to be in Regular Attendance"; (4) on August 2, 2002,

Plaintiff was issued a Seven Day Paper Suspension for going home for lunch; (5) on February 10,

2003, Plaintiff received a Letter of Warning for going home for lunch; (6) on March 8, 2003,

Plaintiff received a Notice of Seven Day Suspension for "Failure to Perform Your Duties in a

Satisfactory Manner"; (7) on April 11, 2003, Plaintiff received a Notice of Fourteen Day

Suspension for periodically missing MSP barcode scans; (8) on May 1, 2003, Plaintiff received a

suspension for leaving his route early and for missing scans; (9) on September 16, 2003,

Defendant Postorino accused Plaintiff of leaving the office late; (10) on September 24, 2003,

Defendant Postorino accused Plaintiff of getting parcels before he pulled down his route; and

---

[1]     Plaintiff does not dispute that these disciplinary actions occurred, but he
adamantly disputes most of the underlying acts cited to sustain each charge.

(11) on or about November 9, 2003, Plaintiff was issued a Notice of Seven Day Suspension for leaving his postal vehicle door open.  (Doc. No. 29-5 at 2-3.)   Other incidents that occurred were: (12) "[d]uring the fall of 2000, and approximately one month after Frank Postorino began supervising at the Bayville Post Office, [Postorino] began to single [Plaintiff] out for harassment;" (13) "[a]round February or March, 2002, [Plaintiff's] co-worker told [Plaintiff] that Mr. Postorino said 'I don't care how long it takes me, but I will get Carmine.  He's sticking it to me and I will get him'"; (14) "[o]n August 24, 2002, Mr. Postorino told [Plaintiff's] co-worker that he was turning into 'a Carmine'"; (15) "[o]n July 5, 2003, Supervisor Postorino went to your home and questioned your wife about your whereabouts"; (16) "[o]n September 16, 2003, Supervisor Postorino accused [Plaintiff] of getting out of office late"; and (17) "[o]n September 24, 2003, Mr. Postorino accused [Plaintiff] of getting parcels before [Plaintiff] pulled down [his] route".  (Defs.' 56.1 Stmt. ¶ 8.)  Plaintiff eventually was terminated.  On June 1, 2004, Plaintiff was issued a Notice of Removal for "Failure to Properly Perform Your Duties," but this was held in abeyance and a "Last Chance Agreement" was issued. (Doc. No. 29-5 at 3.)

Plaintiff, his union representative, and Defendant Postorino signed the Last Chance Agreement on June 30 and July 1, 2004, respectively, and the Agreement states that it was Plaintiff's "last chance to adhere to Postal Rules and Regulations."  (Doc. No. 29-7 at 10.)  It provides in full:

1.  The parties understand and agree to voluntarily enter into the provisions of the LCA.

2.  The implementation of the Notice of Removal shall be held in abeyance for a period of two years from the signing of this agreement.

3.  Postal employees will adhere to all Postal rules and regulations.  Mr. Sauchelli

should pay particular attention to those governing USPS Standards of Conduct specifically ELM 666.1 Discharge of Duties and 666.51 Obedience to Orders, in addition to the M-41 section 112.1 Efficient Service, 112.21 Diligence and Promptness and 131.31 Actual Delivery.

4. Any use of sick leave will be supported with acceptable medical documentation.

5. This last chance agreement will be in effect for a period of two (2) years from the date Mr. Sauchelli signs this agreement.

6. If Mr. Sauchelli violates any of the stipulations included in this Last Chance Agreement, the Notice of Removal will be implemented.

7. This agreement is made on a non-precedent basis.

8. It is mutually agreed to by the parties' signature that this is Mr. Sauchelli's "FINAL" opportunity to demonstrate that he can and will comply with Postal Regulations.

(Doc. No. 29-7 at 10.)

However, on March 8, 2005, Plaintiff received another Notice of Removal for "Violation of Last Chance Agreement" terminating Plaintiff effective April 9, 2005.  (Doc. No. 29-5 at 3.) This notice was dated March 4, 2005, and it stated:

[O]n Saturday, February 5, 2005, at approximately 12:55 pm, Supervisor Frank Postorino observed you delivering mail on Carver Street.  Upon returning to the office at approximately 4:20 pm, you stated you had delivered mail on Belmont and Carver Streets and then went back and scanned 68 Sherman.  In addition, you stated you did not take lunch and would be leaving at 4:30 pm.  I instructed you to case your mail until 5:00 pm.  On Monday, February 7, 2005, I reviewed your MSP scan times from the previous Saturday and noticed that you had an unauthorized deviation from your route and had taken your lunch break.  In addition, it was revealed that you left early on Saturday (4:40 pm) without authorization.

[O]n February 10, 2005, it was revealed that you failed to scan an Express Mail piece that you had delivered on February 9, 2005.  When I questioned you about the delivery of the Express Mail piece, in front of Vincent Daniels, Postmaster, Bayville Post Office, you stated you delivered the Express Mail piece

4

after 12:00pm but did not scan it due to the fact that it would be reported as a failure.

(Defs.' 56.1 Stmt. ¶ 3.)

Plaintiff's union filed a grievance on March 8, 2005, with respect to this final notice of removal.  (Id. at ¶ 5.)  It was resolved "by finding that the removal of plaintiff for violation of the Last Chance Agreement was for just cause."  (Id.)  Plaintiff thereafter filed an EEO complaint, but he did not request a hearing before an Administrative Judge of the EEOC.  (Id. at ¶ 6-11.) Plaintiff appealed the decision to the EEOC Office of Federal Operations ("OFO"), and on February 22, 2008, the EEOC OFO affirmed the finding of no discrimination regarding Plaintiff's claims of discrimination based on gender and disability.  (Id. at ¶ 11.)

Plaintiff first filed a complaint in this matter on April 7, 2008, but it was dismissed, and it was not re-filed until November 14, 2008.  (Doc. No. 1.)  Discovery was completed in this matter on April 13, 2010, and Plaintiff filed his Motion for Summary Judgment on April 26, 2010. Defendants filed their Motion for Summary Judgment on April 29, 2010.  Both motions were fully briefed as of June 18, 2010.

## II.   DISCUSSION

### A.   Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine

5

factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir. 1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. P. 56(e).  The rule does not increase or decrease a party's ultimate burden of proof on a claim.  Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case."  Anderson, 477 U.S. at 255.

Under the Rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the nonmoving party has provided evidence to show that a question of material fact remains.  See Celotex, 477 U.S. at 324.  Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be

6

"supplemented . . . by depositions, answers to interrogatories, or further affidavits," id. at 322 n.3, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted); see also Anderson, 477 U.S. at 247-48 (stating that "[b]y its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact").

What the nonmoving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)(stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993)(stating that "[t]o raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant," but must "exceed[] the 'mere scintilla' threshold and . . . offer[] a genuine issue of material fact").

The Local Civil Rules supplement the Federal Rules of Civil Procedure and provide that "each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." L. CIV. R. 56.1. "Where possible, a single joint Rule 56.1 statement is favored." Allyn Z. Lite, New Jersey Federal Practice Rules 192 (2006 ed.)(citations omitted). "Where a joint statement is not prepared, then, under the rule, 'facts submitted in the

7

statement of material facts which remain uncontested by the opposing party are deemed admitted.'" Id. at 193 (citations omitted).  However, "the parties' statements pursuant to Local Rule 56.1 "cannot bind the Court if other evidence establishes that the stipulated facts are in error." Id. (citation omitted).

In the present case, Plaintiff appears pro se.  As such, the Court must apply a more liberal standard of review to Plaintiff's claims.  Haines v. Kerner, 404 U.S. 519, 520 (1972);  see also United States ex. rel Montgomery v. Brierley, 414 F.2d 552 (3d Cir. 1969) (stating that pro se petitions should be liberally construed); Wade v. Yeager, 377 F.2d 841, 846 (3d Cir. 1967) (recognizing that a petition made without the benefit of counsel must be read with a measure of tolerance).

### B.    Defendants' Motion for Summary Judgment

#### 1.    The Parties' Arguments

Defendants argue that Plaintiff cannot establish any claim of disparate treatment of sex discrimination.  (Defs.' Br. at 4; Doc. No. 29-2 at 6.)  With respect to whether Plaintiff can establish a prima facie case, Defendants concede that Plaintiff is a member of a protected class and that he was qualified for the position in which he was employed.  (Id. at 7.)  Further, Defendants argue that Plaintiff "satisfies the third prong of a prima facie case with regard to a disparate treatment claim based upon those unchallenged disciplinary actions, which he identifies in Issues 2 through 8 . . . but not as to those disciplinary actions which were settled or revoked" such as that in issue 7.  (Id. at 9.)  Defendants, however, assert that "Plaintiff cannot establish that the female letter carriers at the Bayville Post Office received better treatment" because: (1)

8

"according to the supervisor of the letter carriers, Mr. Postorino, plaintiff's missed scans and route deviations far exceeded those of any other letter carrier at the Bayville Post Office, male or female;" (2) "no other employee at the Bayville Post Office violated a Last Chance Agreement;" (3) Mr. Postorino had discussions with and issued a letter of warning to female letter carriers;" and (4) "plaintiff's assertions of favorable treatment of the female letter carriers is based upon conjecture." (Id. at 9-10.) Defendants maintain that "[a] review of the record . . . establishes that the actions taken by management were solely based upon his conduct and repeated failure to follow Postal Service rules and regulations." (Id. at 10.) Moreover, Defendants argue that Plaintiff cannot meet his burden of establishing pretext because each of the disciplinary notices that were issued to Defendant cite to Postal Service rules and regulations, and the asserted bases of each of these violations have not been disproved." (Id. at 11-12.) Finally, Defendants assert that his claim of hostile work environment based on sex must fail because: (1) "none of the instances about which plaintiff complains could reasonably be found to be an 'instance of intentional discrimination;'" (2) "the record establishes that plaintiff cannot show that any of the incidents encompassed within his lawsuit were connected to his sex;" and (3) "plaintiff cannot demonstrate the existence of a severely and pervasively abusive work environment." (Id. at 14-15.)

In opposition, Plaintiff submitted an eighty-five page document including many exhibits that the Court considered in full. (Doc. No. 31.) In summary, Plaintiff asserts that Defendants' motion should be denied, and the Court should find that Plaintiff did not violate the Post Office's rules and regulations in the first instance. (Pl.'s Opp. Br. at 1.) Plaintiff frames his argument as "two-tiered" by first arguing that he was singled-out, and by second arguing that his female co-

9

workers were not treated the same way.  (Id. at 4.)  Plaintiff basically states with respect to every

single incident that comprises his disciplinary record that his supervisor, Frank Postorino,

"stalked" him, "harassed" him, and would watch and wait for behavior that would satisfy a

disciplinary standard and then write Plaintiff up for the infraction or alternatively fabricate the

grounds for discipline.  (Id. at 2-5.)   He further argues that some of the conversations between

himself and Defendant Postorino should not be considered because they are not part of the

disciplinary proceedings.  (Id. at 6-14.)  The remainder of Plaintiff's submission addresses each

underlying situations that formed the bases for the disciplinary actions against him, and it

addresses the alleged disparate treatment he received versus various female employees.  To this

end, Plaintiff asserts that: (1) Plaintiff received a seven-day suspension notice on February 23,

2002, citing failure to be in regular attendance, but female letter carriers were not cited for this

infraction and they used more sick leave than did Plaintiff; (2) Plaintiff received a seven-day

suspension notice dated March 8, 2003, because he received an on-the-job injury, but female

letter carrier Ms. Fleming, was not disciplined for her on-the-job injury; (3) Plaintiff received a

fourteen-day suspension notice dated April 11, 2003, citing missing barcode scans, but two of the

female letter carriers missed barcode scans and they were not disciplined.  (Id. at 22-25.)

Plaintiff maintains that he was discriminated against as opposed to the female letter carriers with

respect to these above-stated disciplinary actions, and he argues throughout his opposition the

following: (1) "I always unjustly received a discipline whereas the female letter carriers never

received any discipline for the similar actions as me" (Id. at 21); (2) "What's the reason that I

was the only one singled out and disciplined and not the females?? . . . DISCRIMINATION

AND HARASSMENT" (Id. at 22); (3) "no one female letter carrier received discipline in this

10

similar situation" (Id. at 23); (4) Defendant Postorino said to another employee "'I don't care how long it takes I'm going to get him,'" referring to Plaintiff; (Id. at 25); (5) "I am producing the female comparative records to reveal similar situated individuals who were treated favorably when I was singled out and disciplined" (Id. at 75); (6) "all . . . was without harassing the female carriers who were engaged in the same situations as I was at one point or another" (Id. at 77); and (7) "My job performance was equal to any female carrier as far as keeping my route clean, up to date, safe work area, efficient, in office and out office" (Id.). Finally, Plaintiff argues that Defendant Postorino created a hostile work environment due to Plaintiff's gender and would ask Plaintiff questions to the effect of why Plaintiff took such a long time in the bathroom (id. at 79) and that Defendant Postorino would stand near Plaintiff while he was working in the office and criticize his work. (Id. at 78.) Finally, Plaintiff states that at times he would receive a personal call or union call at work, and Defendant Postorino "would wait there intimidatingly, [sic] grunting, mumbling or just plainly interfere and rudely harass me, saying to, 'GET OFF!' 'HURRY UP' 'GET BACK TO WORK!!' . . . he NEVER said this to the female letter carriers, relating to his bathroom and phone" comments. (Id. at 79.)

Defendants maintain that Plaintiff cannot establish the fourth element required to show a prima facie case, specifically that the "similarly situated employees, not in plaintiff's protected group, received better treatment." (Defs.' Reply Br. at 8.) Defendants point out that "Mr. Postorino took corrective action against other employees, including female letter carriers," and that while Plaintiff has argued that certain discussions that were not part of his disciplinary proceedings should not be considered by this Court, these events are relevant and should be considered to show that "Mr. Postorino had discussions with male employees for deviating from

11

their routes, issued letters of warning for unsatisfactory performance to another male and a female employee, had a discussion with another male employee regarding poor attendance, and had discussions with another male employee and a female employee for missing scans." (Id. at 8-9.)  Further, Defendants assert that the main difference between Plaintiff's situation and that of other similarly situated employees is his "long-history of disciplinary issues and Last Chance Agreement."  Defendants state that certain disciplinary notices were withdrawn or rescinded, and therefore, Plaintiff's reliance on these actions in support of his claim is without merit because they are not considered adverse employment actions.  (Id. at 10.)  In addition, Defendants note that "plaintiff has not presented sufficient evidence which would allow a reasonable factfinder to conclude that the disciplinary actions at issue were taken against him because of his gender."  (Id. at 11.)  Morever, Defendants assert that even if the Court determines that Plaintiff has established a prima facie case, he cannot establish pretext.  (Id. at 11.)  To this end, Defendants assert that the law does not permit one to "establish pretext by showing that the employer's decision was wrong or mistaken."  (Id. at 12.)  In addition, Defendants assert that "the record establishes that the Postal Service's disciplinary decisions, including his removal for violation of the Last Chance Agreement, were justified" and that "nothing in the record of this case connects plaintiff's long list of discipline, or any actions taken towards him, to his gender."  (Id. at 12-13.)  Finally, with respect to Plaintiff's claim of hostile work environment, Defendants argue that it must fail because Plaintiff cannot meet any of the four elements required to maintain the cause of action. (Id. at 14.)[2]

---

[2]        Defendants argue in reply for the first time that "Plaintiff has incorrectly named the Postal Service and his former supervisor, Mr. Postorino, as defendants" rather than "the Postmaster General of the U.S. Postal Service, the head of the agency in which the alleged

**2.**    **Analysis**[3]

a.    Claim of Reverse Gender Discrimination

Under Title VII, it is an unlawful employment practice to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e(a)(1) (2006).    The Supreme Court recognized that it is often difficult for a plaintiff to prove that an employer acted with conscious intent to discriminate. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). One manner in which a plaintiff can meet this ultimate burden of persuasion is by demonstrating that an employer's stated reason for the challenged action is not the true reason, but rather was a pretext for unlawful discrimination. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). In cases where there is no direct evidence of discrimination, the United States Court of Appeals for the Third Circuit applies the burden-shifting analysis set forth in McDonnell

discriminatory acts occurred."  (Defs.' Reply Br. at 1 n.1.)  The Court will therefore not address this argument because reply briefs should be limited to that which was previously argued, and should not raise new arguments for the first time for consideration by the Court.  See Dana Transport v. Ableco Finance, 2005 U.S. Dist. LEXIS 18086 (D.N.J. Aug. 17, 2005) (stating that "arguments raised for the first time in [a] reply brief will be disregarded"); Bayer AG v. Schein Pharm., 129 F. Supp. 3d 705, 716 (D.N.J.), aff'd 301 F.3d 1306 (3d Cir. 2002), (striking the portion of the reply brief that raised new issues because the opposing party would otherwise have "no opportunity to respond to newly minted arguments contained in reply briefs").

[3]    Although Plaintiff, contrary to Local Rule, has not supplied an Opposing 56.1 Statement, the Court, in the interest of judicial efficiency and in consideration of Plaintiff's pro se status, has reviewed Plaintiff's assertions insofar as they reference disputes with Defendants' 56.1 Statement.  The Court notes that Plaintiff addressed Defendants' 56.1 Statement in his lengthy Opposition Brief and the Court has considered this submission in full and has examined the record in its entirety.

Douglas. See Barber v. CSX Distrib. Servs., 68 F.3d 694 (3d Cir. 1995). Under this analysis, a

plaintiff must first establish a prima facie case of discrimination. See Burdine, 450 U.S. at 254;

McDonnell Douglas, 411 U.S. at 802.

 Title VII was enacted to prohibit employers from discriminating against employees on

several bases, including gender, with respect to compensation, terms, conditions, or privileges of

employment.  See Burdine, 450 U.S. at 259.  In most instances, to state a claim for discrimination

under Title VII, a plaintiff must show by a preponderance of the evidence that: (1) the plaintiff

belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to

an adverse employment action despite being qualified; and (4) under circumstances that raise an

inference of discriminatory action, the employer continued to seek out individuals with

qualifications similar to the plaintiff's to fill the position. See McDonnell Douglas, 411 U.S. at

802; Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 348 n.1, 352, 356 (3d Cir. 1999).  Yet, the

"general version" of the prima facie test remains flexible and must be tailored to fit the specific

context in which it is applied, see Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 581 (3d Cir.

1996), and the burden of making such prima facie case is light, see Burdine, 450 U.S. at 253, i.e.,

the plaintiff merely bears the initial burden of establishing a prima facie case by a preponderance

of the evidence. See St. Mary's Honor Ctr v. Hicks, 509 U.S. 502, 506 (1993).

 The general standard, however, has been modified when a plaintiff asserts a claim of

discrimination against those who have traditionally not been the victims of discrimination. It has

been modified because the general test set forth in McDonnell Douglas test requires, in the first

prong, that the plaintiff assert that he or she is a member of a protected class.  However, a person

who seeks the protections afforded through Title VII, but who happens to be a part of the

majority, cannot set forth facts to meet this prong's requirement.  While it has been modified, "[t]he premise underlying the varied <u>McDonnell Douglas</u> standards remains unchanged.  It stems from Congressional efforts to address this nation's history of discrimination against . . . minorities, a legacy . . . so entrenched that we presume acts, otherwise unexplained, embody its effect." <u>Iadimarco v. Runyon</u>, 190 F.3d 151, 158 (3d Cir. 1999) (quoting <u>Murray v. Thistledown Racing Club, Inc.</u>, 770 F.2d 63, 67 (6th Cir. 1985)) (internal quotes omitted).

Therefore, in cases involving reverse discrimination, or that against a member of the proverbial majority, here, men, the Third Circuit has articulated a modified burden shifting analysis that differs from the general <u>McDonnell Douglas</u>.  <u>See</u> <u>Iadimarco v. Runyon</u>, 190 F.3d 151.  Under the <u>Iadimarco</u> test, the plaintiff must establish a prima facie case by presenting sufficient evidence to allow a fact finder to conclude that the defendant treated some people less favorably than others based on gender. "[A] plaintiff who brings a 'reverse discrimination' suit under Title VII should be able to establish a prima facie case in the absence of direct evidence of discrimination by presenting <u>sufficient evidence</u> to allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated plaintiff 'less favorably than others because of his race, color, religion, sex, or national origin.'" <u>Iadimarco</u>, 190 F.3d at 163 (quoting <u>Furnco Construction Corp. v. Waters</u>, 438 U.S. 567, 577 (1978)). Next, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action.

If the plaintiff successfully demonstrates a prima facie case of discrimination (under <u>Iadimarco</u> or under <u>McDonnell Douglas</u>, depending what test is implicated by the asserted facts), the burden of production - but not the burden of persuasion -- shifts to the defendant to articulate

a legitimate, nondiscriminatory reason for the adverse employment decision. See Simpson v. Kay Jewelers Div. of Sterling, Inc., 142 F.3d 639, 644 n.5 (3d Cir. 1998); see also Corbett v. Sealy, 135 Fed. App'x 506, 509 (3d Cir. 2005) (explaining the standard for the purposes of the Iadimarco reverse discrimination scenario); Medcalf v. Trustees of University of Pennsylvania, 71 Fed. App'x 924, 927 (3d Cir. 2003) (same). The defendant can satisfy this burden by offering evidence of a nondiscriminatory reason for its action. See Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). Once the defendant offers a legitimate, nondiscriminatory reason for the challenged conduct, the plaintiff has the ultimate burden of proving by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination. See Jones v. Sch. Dist. of Philadelphia., 198 F.3d 403, 410 (3d Cir. 1999). The McDonnell Douglas burden-shifting analysis is applied to cases under Title VII. See McDonnell Douglas, 411 U.S. at 801-806.

Here, Plaintiff was fired from his employ at the United States Postal Services, and therefore, Plaintiff's Title VII claims are brought pursuant to Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  Turning first to whether Plaintiff has satisfied his burden and established a prima facie case of reverse discrimination, the issue the Court first addresses is whether the evidence that Plaintiff submitted is sufficient, or in other words, whether it would "allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated plaintiff 'less favorably than others because of his race, color, religion, sex, or national origin.'" Iadimarco, 190 F.3d at 163 (citation omitted).  The Court concludes that the most salient inquiry is whether Plaintiff has provided sufficient evidence to show that Plaintiff's treatment was motivated by his gender and not by some other,

16

unprotected motive.  The Court concludes that as a matter of law, Plaintiff's claim for relief is fatally flawed, in that a reasonable fact finder could not conclude that the treatment Plaintiff sustained at the hands of his employer was due to his gender.  Although Plaintiff has cited incidents where he was also disciplined for certain behavior while he asserts other female letter carriers were not, the record indicates that in fact the various female letter carriers were disciplined for various infractions and other male letter carriers were disciplined for various infractions.  The record also indicates that while both male and female carriers were disciplined, no other letter carriers were terminated either male or female.  The Court concludes given the totality of the circumstances that no reasonable fact finder could therefore conclude that this case is an instance of reverse discrimination.  The Court concludes that Plaintiff's case is without merit due to this fatal flaw, as he has not set forth sufficient evidence to establish a prima facie case that he was disciplined <u>due to his gender</u>.  Rather, Plaintiff indicates only at a minimum that Defendant Postorino did not believe that Plaintiff performed his work adequately, or at a maximum that Defendant Postorino did not like Plaintiff personally and singled him out on this basis.  The Court concludes that while Plaintiff definitively disagrees with Defendant Postorino's reasons for disciplining and ultimately terminating him, this is not sufficient to sustain a claim for reverse discrimination based on gender.

b.    <u>Claim of Hostile Work Environment based on Sex</u>

The elements to sustain a prima facie case of hostile work environment sexual harassment under Title VII are: "(1) the employee suffered intentional discrimination because of [his or her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally

17

affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability." <u>Bonnenberger v. Plymouth Township</u>, 132 F.3d 20, 25 (3d Cir. 1997) (quotations and citations omitted). When management-level employees have actual or constructive knowledge about the existence of a sexually hostile environment and fail to take prompt and adequate remedial action, leading the employee to believe that harassment will be tolerated, the employer can be held liable. <u>See Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1486 (3d Cir. 1990).

Given the Court's conclusion with respect to Plaintiff's reverse gender discrimination claim, the Court concludes that Plaintiff's hostile work environment claim must likewise fail. The first element to sustain such a claim requires a showing that " the employee suffered intentional discrimination because of [his or her] sex." <u>Bonnenberger</u>, 132 F.3d at 25.  Plaintiff has not met this burden.  The Court need not, therefore, consider the other elements to sustain such a claim.  For these reasons, the Court concludes that Defendants' Motion for Summary Judgment with respect to this claim is granted.

### C.    Plaintiff's Motion for Summary Judgment

Because the Court granted Defendant's motion for summary judgment, the Court need not consider Plaintiff's motion, and it therefore is denied as moot.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.  An appropriate form of order

accompanies this opinion.


Dated: September 10, 2010

___s/ Garrett E. Brown, Jr.___
GARRETT E. BROWN, JR., U.S.D.J.
